## ORAS et al. v. UNITED STATES. *
### No. 7131.

Circuit Court of Appeals, Ninth Circuit.
Nov. 13, 1933.

*Rehearing denied February 23, 1934.

464

Ervin F. Dailey, of Seattle, Wash., for appellants Oras, Richards, Moran, and Hogstedt.

John J. Sullivan, of Seattle, Wash., for appellant Swalwell.

Anthony Savage, U. S. Atty., and De Witt C. Rowland, Asst. U. S. Atty., both of Seattle, Wash.

Before WILBUR and GARRECHT, Circuit Judges, and FEE, District Judge.

WILBUR, Circuit Judge.

The defendants were indicted for a conspiracy to violate the National Prohibition Act and the internal revenue laws, specifically, for a violation of section 3289 of the Revised Statutes (26 USCA § 266), a violation of section 3282, Revised Statutes (26 USCA § 307), and a violation of section 3, title 2 of the National Prohibition Act (27 USCA § 12). The offenses were charged in four counts in the indictment, and the appellants were all convicted on all the counts.

As to the appellants other than Swalwell, there is no serious question as to the sufficiency of the evidence to sustain the verdict. Briefly outlined, this evidence shows that on the night of January 20, 1932, between 10 and 11 o'clock, prohibition officers discovered a distillery in operation on Whidby Island, about three hundred yards off the county road on the bank of a small lake. A 350-gallon still was in active operation; a smaller 60-gallon still, a square tank, was not in operation. There were twelve vats, or mash barrels, of approximately 350 gallons

capacity each, ten of which contained mash (3,500 gallons in all), and eight 5-gallon cans of alcohol. After nailing up the door of one of the buildings, the prohibition officers left for the purpose of obtaining tools to wreck the plant. They returned about 3:30 a. m., but during their absence 89 sacks of sugar, some yeast, and various other materials had been removed from the building which was entered by prying open the door. They followed the tracks of automobiles leading from the building and discovered the appellant Oras drunk and asleep in a coupé whose tracks they had followed from the door of the distillery. They also found a truck, similarly tracked, in which the appellant Richards was asleep. On being awakened, Oras stated that he had been running the still and that Richards had been doing his hauling for him and had hauled the sugar away that night. After the arrest of Oras and Richards, appellant Hogstedt claimed the coupé in which Oras was arrested. In his talk with investigator Reagan, Hogstedt admitted that he financed the still operations, and stated that he had furnished $700 therefor to appellant Swalwell. The land upon which the still was located had been recently purchased by appellant Moran, who was on the land and received there the lumber used in the erection of the still house.

The second assignment of error of the appellants other than Swalwell is that the court erred in allowing testimony of Mr. Sherwood, assistant United States attorney, and Leonard Reagan, a prohibition investigator in the federal service, as to statements made to them after the raid relating to Swalwell's connection with the conspiracy. As far as this testimony related to the transactions between Hogstedt and Swalwell, Hogstedt's admissions were properly admissible in evidence against him. The court instructed the jury at the time the evidence was adduced that the evidence should be disregarded by them as far as Swalwell was concerned, and should be considered only against the defendants in whose presence it was made or the defendant by whom it was made. There was no error in this ruling.

The third assignment by the appellants, other than Swalwell, related to the testimony concerning the possession by Swalwell of a half pint of alcohol which he took to a chemist for analysis. The only objection made was that the testimony was not rebuttal. This objection was sustained, but the court, in the exercise of its discretion as to the order of proof, subsequently permitted a single question. No objection was offered to this question.

The fourth assignment of error is that the court erred in denying the defendants' motion for a new trial. The action of the court in denying the motion for a new trial in this case is not reviewable on appeal; there being no abuse of discretion.

Appellants' fifth, sixth, and seventh assignments of error relate to certain instructions given by the trial court. These instructions were not objected to, and consequently the alleged error in giving them cannot be reviewed by this court. It may be said in this connection that the trial judge called the attention of counsel to the fact that it was necessary for them to specifically object to the instructions in order to secure a proper exception, and that this was not done.

The last assignment of the appellants, other than Swalwell, was a general one that the court erred in entering a judgment and sentence on the verdict. This assignment is not discussed in the brief, and, in any event, is too general to merit consideration.

The evidence against Fred Swalwell consisted of the above-mentioned admissions and declarations made by defendant Hogstedt to the government agents. These declarations were to the effect that Hogstedt had given Swalwell $700 to finance the distillery operations, and that Hogstedt was to accept payment therefor in alcohol produced by the distilling operations. These statements were not made in furtherance of the conspiracy, and were therefore not admissible against Swalwell on the theory that he was a coconspirator. Tofanelli v. U. S. (C. C. A.) 28 F.(2d) 581; Collenger v. U. S. (C. C. A.) 50 F.(2d) 345; Underhill on Criminal Evidence (3d Ed.) § 719.

Only two other items of evidence were adduced in support of the indictment so far as appellant Swalwell is concerned. It was shown that he introduced appellant Moran to the real estate agent from whom the land was purchased which was subsequently used for the erection of the still. There is no showing that he knew anything concerning the purposes for which the land was being purchased or was subsequently used other than the hearsay declarations of Hogstedt. The other item of proof relied upon by the government is the testimony of a chemist that Swalwell employed him to analyze a half pint of alcohol which Swalwell testified he had had analyzed for his own use. If we eliminate, as we should, the consideration of the

hearsay evidence, the remaining evidence merely showing the introduction of one of the conspirators to the agent who subsequently sold the conspirators land used in their operations, and the admission by the appellant Swalwell that he had procured an analysis of a half pint of alcohol, were wholly insufficient to establish his guilt or to show any connection with the criminal conspiracy. The appellant Swalwell did not move for an instructed verdict at the conclusion of the testimony, and ordinarily would thereby be precluded from presenting to this court the question of whether or not there was sufficient evidence to justify his conviction. We think, however, that, even in the absence of such a motion, the matter should be given consideration in connection with other questions which were raised by this appellant. At the time the declarations of Hogstedt were received in evidence, the defendant Swalwell requested the court to instruct the jury that the evidence was not admissible as to him, and in pursuance of this request such instruction was given. The defendant apparently relied upon this ruling, and refrained from making a similar objection or request when the witness Sherwood testified. In view of the fact that this subsequent testimony was virtually the same as that which had been previously limited by the court to the other defendants, failure to renew the motion for an instruction to that effect will perhaps waive that question, if the matter were considered from a strictly technical standpoint, but the court, after instructing the jury at the time the evidence of Reagan was admitted, gave a contrary instruction at the time the case was submitted to the jury, instructing them in effect that, if a conspiracy was shown to exist between the appellant Swalwell and his codefendants, then in that event the evidence of Reagan and Sherwood as to declarations of Hogstedt could be considered by them as evidence against defendant Swalwell. This instruction was erroneous, for the reason that the evidence of Reagan was not admitted as to defendant Swalwell, and therefore as to him was not in the case. Having been limited in its effect at the time of its admission, if the United States attorney subsequently concluded there was sufficient evidence of conspiracy to justify the introduction of this evidence as to the appellant Swalwell, the evidence should have been offered anew. The instruction was erroneous because there was no evidence from which the jury could properly conclude that there was a conspiracy between Swalwell and the other defendants except the declarations of the alleged coconspirator which, as the

court properly instructed the jury, were not to be considered as evidence until independent evidence of the conspiracy was shown. It was incorrect for the further reason that the declarations were not admissible in any event, regardless of whether or not a conspiracy was shown because they were not made in furtherance of a conspiracy, and in this connection it should be further stated that the court expressly informed the jury that the conspiracy terminated at the time the raid was made. While this instruction was on the question of fact rather than of law, it is a just inference from the record. There is no evidence of any acts in furtherance of the conspiracy after the raid of the premises. The rule is that, where the conspiracy has terminated, the declarations of coconspirators are no longer admissible against the coconspirators. Tofanelli v. U. S. (C. C. A.) 28 F. (2d) 581; Collenger v. U. S. (C. C. A.) 50 F.(2d) 345; Underhill on Criminal Evidence (3d Ed.) § 719. The court instructed the jury as follows:

"It is also true that the declaration of one of the parties during the pendency of the illegal enterprise is not only evidence against the party making the statement, but is evidence against the other parties to the conspiracy, and when the statement is proven the other parties are as much responsible under such declaration and the acts to which it relates as though the acts were committed by themselves.

"In this case evidence was presented with relation to statements made by the defendant Hogstedt, of conversations and statements that involved the defendant Fred Swalwell. I admonished you at that time that the statements made by Hogstedt were evidence against himself and before these statements could be construed as evidence against Swalwell, the government must first show that Swalwell was a part of the conspiracy, and until that conspiracy is shown, you should withhold any and all conversation with relation to Swalwell, and only consider that as against the defendant Hogstedt himself. And I renew that suggestion and request again. But if from the evidence that has been presented you conclude that Swalwell was, in fact, a part of the conspiracy, then all statements that Hogstedt made would be considered against Swalwell just the same as though Swalwell had made the statements himself. A conspiracy has been compared to a partnership in crime. In a partnership, a partner for an unlawful purpose as a partner for a lawful purpose, each one, while acting

in the partnership scheme or business, is acting for all of the partners to the enterprise; all for each, and each for all, applies to the actions of all of the parties. * * *

"In determining whether a conspiracy has been formed between the defendants, or any of the defendants, you will take into consideration all of the evidence which has been presented, and fairly consider it, duly weigh it, and deliberate upon it to see how it fits. with relation to the acts charged, and if you believe from the evidence that a conspiracy. was formed, and that one or more of the overt acts have been established to carry forward the conspiracy, then you will find such defendants whom you find to have conspired, guilty of the charge; and if you have a reasonable doubt, you will return a verdict of not guilty as against such defendant as to whom you have a reasonable doubt. * * *

"Now in relation to the overt acts that have been set out in the indictment, the buying of this land from Mr. Phillips; what connection the defendant Swalwell had to that, or Moran? There was testimony tending to show, and I think it is conceded, that this contract was obtained by Mr. Moran from Mr. Phillips for the 80 acres of land upon which this still, it is testified, was erected. It is likewise in evidence that Mr. Swalwell introduced Mr. Moran to the real estate agent in Everett for the purpose of getting in touch with the party that owned this land, to buy it. The agent took this up with Mr. Phillips, obtained the contract and Phillips received the $150.00.

"Mr. Swalwell said he did introduce him, and he told you the reason and motive and denied it had anything to do with the conspiracy.

"Then there is testimony here, and it is likewise not denied, that Mr. Swalwell did take some alcohol to a chemist in Everett, for the purpose of having it analyzed as to alcoholic content and fitness for beverage purposes, because he said, he wanted to use it himself. * * *

"You will take all these elements into consideration and likewise the fact that after these defendants were arrested according to the testimony, there were statements made by Mr. Hogstedt—and these statements would be evidence against himself, if they were true —he denies that. He told us what he did say and his recollection of it. You will have to determine what the statement was and the statement of the defendant Swalwell. And if you find that Swalwell, by reason of his activity in getting Moran in touch with the owner of the land, and in getting the alcohol analyzed and as to its fitness for beverage purposes. And if you believe he was a member of the conspiracy then you can consider the statements made by Hogstedt as against the defendant Swalwell, if you find the statements are true and have application. And likewise the visits of Swalwell to the United States attorney's office, and likewise what he said and the excuse that [he] gave upon the witness stand for being there. And from all this determine whether there was a conspiracy and who were the parties to it. * * *

"Swalwell also testified that he had a half of pint of a bottle of alcohol, and he of course had possession.

"Time is not so material. This conspiracy is charged as a continuing conspiracy from the eleventh day of November until the indictment was returned. This indictment was returned in May, May 3, 1932, and that conspiracy would be limited to the time of the raid on the 21st day of January, 1932."

It was error to instruct the jury that they could consider evidence of the declaration of Hogstedt against the codefendant Fred Swalwell for the reasons already stated, even if there were sufficient evidence to justify the conclusion that Swalwell was a member of the conspiracy. The court instructed the jury also that the conspiracy terminated at the time of the raid. The declarations referred to were made after the raid, and for that reason could not be considered, although it should be said that the question when the conspiracy terminated was a question for the jury. The statement of the court in submitting this question to the jury was also erroneous, in that it is stated that at the time of the admission of the testimony the jury was advised that it could only be considered by it in the event that a conspiracy was shown, whereas the fact was that the jury was then instructed that the evidence was to be disregarded as far as Swalwell was concerned. The objection to the charge to the jury was too general to merit consideration. The court warned counsel at the time that it was too general, stating: "The exception cannot be allowed. It is too general. It must be pointed out to the court—the specific objection."

In view of the erroneous instruction to the jury with reference to their right to consider incompetent evidence in determining the guilt of Swalwell and the fact that without such testimony the evidence is clearly insufficient to establish guilt, there being no sufficient evidence that Swalwell was a member of the conspiracy other than the incompetent.

evidence, we feel that this is a case where manifest injustice has been done to a defendant, and that such injustice is so apparent from the record that we should consider the error in the instructions above mentioned, notwithstanding the failure of counsel to make appropriate and timely objection thereto.

Judgment affirmed as to defendants Oras, Richards, Moran, and Hogstedt, and reversed as to Swalwell.